■ PERCIVAL C. LYONS, Respondent, v NEW AMERICAN LIBRARY, INC., Appellant, et al., Defendants.—Appeal from an order of the Supreme Court at Special Term, entered January 3, 1980 in Franklin County, which denied a motion by defendant New American Library, Inc., to dismiss the complaint. Plaintiff, Percival C. Lyons, has been the Sheriff of Franklin County since January 1, 1963, with an office at the county seat in Malone, New York. He commenced this libel action based upon a passage which appeared at pages 162 and 163 in the novel .44 written by codefendants Jimmy Breslin and Dick Schaap and published by defendant New American Library, Inc. (NAL). According to the complaint, the novel is the "detailed and sometime frustrating search by the New York City Police Department to discover and ultimately apprehend the man commonly called the 'Son of Sam' who had murdered or seriously wounded several young women and their escorts by the use of a revolver better known as a .44 caliber Bulldog revolver." The passage in the novel upon which plaintiff bases his complaint reads as follows: "In Flushing, Carillo walked out of his commander's office and into the large office. Two of the men originally working on the case, Seibert and Swanson, sat with the computer printouts of owners of regis-

tered .44—caliber Bulldog revolvers who were living in New York, New Jersey, Connecticut, and Pennsylvania. Carillo could see by check marks made by the detectives that there were still over a hundred registered owners to be checked. 'Are you fellas looking to retire?' Carillo asked. 'Not me,' Seibert said. 'Me either,' Swanson said. 'Oh, I was just wondering,' Carillo said. 'Somebody told me that one of you, or both of you, I forgot which it was, but anyway that somebody was going to retire.' 'We been up to our asses in this thing,' Seibert said. He had received the communication and was attempting to answer it. 'See, Inspector? We got a guy here in Malone, New York. We ask the Sheriff up there to go to the guy and have him fire his weapon and send us the slug so we can test it, and you know what the Sheriff in Malone says? He says, "I got no way to do that." We tell him, "Just get a pipe and shoot down the pipe into a tub of water." The Sheriff says to me, "Send me a pipe." ' 'What did you do with the guy?' Carillo asked. 'Nothing, Inspector,' Seibert said. 'That's what we're sitting here talking about.' A hand began to scour Carillo's insides with sandpaper. 'This is tough going, Inspector,' Swanson said. 'Maybe here and there only we get a break. Like this one here in Hamden, up in Connecticut. Guy died. So we can go past him now. Otherwise, we'd have to stop at the name and go all through what we're going through with this quiff in Malone.' " In his first cause of action, plaintiff alleges that these passages falsely charge him with incompetence to perform his duties as Sheriff, together with a lack of appreciation of the needs of other law enforcement agencies, and a disregard for the need of co-operation with them. In his second cause of action, plaintiff alleges that the word "quiff" is slang for a "male who is a sexual pervert" and that being called a "quiff" injured his good name and reputation. Plaintiff seeks both compensatory and punitive damages in the amount of $2,000,000 and $3,000,000, respectively. NAL moved to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7) for failure to state a cause of action, on the grounds that the quoted passage is not defamatory and that it is an expression of opinion which is protected under both the Federal and State Constitutions. Special Term denied NAL's motion and held that the words, taken as a whole, are susceptible of a defamatory meaning so as to entitle plaintiff to a jury determination of the issue. Further, it held that the word "quiff" does not constitute opinion which is deserving of constitutional protection since there are no facts set forth to support that allegation. In an action for libel, it is well settled that in the absence of any allegations of special damages, the complaint will not be found to state a cause of action unless the words are libelous per se *(Grinaldo v Meusburger,* 34 AD2d 586). Such a finding requires that the language must refer to the plaintiff in his trade, occupation or profession *(Grinaldo v Meusburger, supra,* p 587). Of course, the words must actually defame the complaining party *(Dauer & Fittipaldi v Twenty First Century Communications,* 43 AD2d 178). NAL correctly maintains that the statements which form the basis of the complaint cannot be read to refer to plaintiff. The work clearly states that it is fiction and that, combined with plaintiff's admission that he did not participate in the Son of Sam investigation, requires the conclusion that the passage is not actionable. The first cause of action alleges that plaintiff was falsely accused of being incompetent to perform the duties of his office. Generally, there can be no liability where a professional is charged with ignorance or mistake on a single occasion only and not accused of general ignorance or lack of skill *(November v Time, Inc.,* 13 NY2d 175). The discussion which occurs on pages 162 and 163 concerns the Sheriff's refusal to conduct a ballistics test, which,

admittedly, is a single incident. For these reasons, reversal of the order denying defendant's motion to dismiss the first cause of action is mandated. Plaintiff's second cause of action should likewise be dismissed. Plaintiff objects to the reference to the Sheriff as a "quiff". NAL contends that "quiff" is not meant to be taken literally but is merely vituperation. In *Greenbelt Pub. Assn. v Bresler* (398 US 6), the Supreme Court held that the characterization of Bresler's negotiating position as "blackmail" was, not meant as charging him with a crime, but rather, "was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable" *(Greenbelt Pub. Assn. v Bresler, supra,* p 14). Likewise, in *Thomas v Flavin* (58 AD2d 1031) the Fourth Department followed the holding of the Supreme Court in *Letter Carriers v Austin* (418 US 264) by ruling that the word "scab" could not be the basis of a libel judgment. Even more closely related to the case at bar, it was held in *Curtis Pub. Co. v Birdsong* (360 F2d 344), that the use of the term "bastards" in reference to the Mississippi Highway Patrol did not give rise to a cause of action for libel. Nevertheless, plaintiff urges that "quiff" is a more descriptive word than those presented above and that its generally accepted meaning is "male sexual pervert". However, "bastard" is no less descriptive than "quiff", and considering the absence of any other reference to the fictional Sheriff's habits, the word cannot be taken literally. Thus, plaintiff's second cause of action should also be dismissed. Order reversed, on the law, and complaint dismissed, with costs. Mahoney, P. J., Greenblott, Sweeney, Kane and Herlihy, JJ., concur.